**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| A.B., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-25-2475 |
| v. | * | |
| | * | |
| YMCA CAMP TOCKWOGH, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This case involves an alleged incident of sexual abuse suffered by a minor child, A.B. ("Plaintiff"), while attending Camp Tockwogh in Worton, Maryland. *See* ECF No. 2. Defendants are (1) "YMCA Camp Tockwogh"; (2) Young Men's Christian Association of Delaware ("YMCA-Delaware"); and (3) National Council of Young Men's Christian Associations of the United States of America a/k/a YMCA of the USA (" "YMCA-USA").

The matter is before the Court on YMCA-USA's motion to dismiss for lack of jurisdiction and failure to state claim. *See* ECF No. 16. No hearing is necessary to resolve the pending motion. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, YMCA-USA's motion shall be granted.

## I.    PROCEDURAL HISTORY

On May 25, 2025, A.B.[1] filed a civil action in the Circuit Court of Maryland for Kent County, alleging negligence (Count I); negligent hiring, training, supervision and retention (Count

---

[1] Plaintiff filed his Complaint under the pseudonym "A.B." pursuant to Md. Code, Cts. & Jud. Proc. § 3-8A-27.

1

II); and gross negligence (Count III) against "YMCA Camp Tockwogh," YMCA-Delaware, and YMCA-USA. *See* ECF No. 2 ("Compl.") ¶¶ 6–10. YMCA-Delaware is a Delaware corporation with its principal place of business in Delaware, and YMCA-USA is an Illinois corporation with its headquarters and principal place of business in the State of Illinois. *See id.* ¶¶ 5–7.

On July 28, 2025, YMCA-USA filed a notice of removal. *See* ECF No. 1. On August 26, 2025, YMCA-Delaware filed an answer to A.B.'s complaint. *See* ECF No. 15.[2] On the same day, YMCA-USA filed a motion to dismiss for dismiss for lack of jurisdiction and failure to state a claim. *See* ECF No. 16. Plainitff opposed YMCA-USA's on October 9, 2025, *see* ECF No. 21, and YMCA-USA filed a reply on November 19, 2025, *see* ECF No. 26.

## II.    FACTUAL BACKGROUND[3]

In 2014, when Plaintiff was around 13 years old, he was a camper at Camp Tockwogh. *Id.* ¶ 14. YMCA Camp Tockwogh is a "local chapter" YMCA-Delaware. *Id.* ¶ 5.

One day while at camp, Plaintiff asked a camp counselor[4] to accompany him from his cabin to the bathroom, per Camp Tockwogh policy. *Id.* ¶ 16. There were no bathrooms in the campers' cabins. *Id.* The counselor who accompanied Plaintiff "led [him] to a bathroom stall" and went inside the stall with him. *Id.* ¶ 17. While in the stall, the counselor removed Plaintiff's pants and underwear. *Id.* He then "masturbated the Plaintiff's penis" while he "masturbated his own penis."

---

[2] In its notice of removal, YMCA-USA stated that, although Plaintiff's Complaint alleges that YMCA Camp Tockwogh is "incorporated in Maryland," the camp is actually "run by and a branch of Defendant YMCA-Delaware" and is not a separate legal entity. *See* ECF No. 1 ¶ 9. In its answer, YMCA-Delaware confirmed that "YMCA Camp Tockwogh" is not a separate entity nor a properly named defendant because it is run by and is a branch of YMCA-Delaware. *See* ECF No. 15 at 1–2. Plaintiff does not dispute this assertion. Therefore, the Clerk shall be directed to terminate YMCA Camp Tockwogh as a defendant in this case.

[3] Plaintiff alleges the following facts in his Complaint. ECF No. 2.

[4] Plaintiff does not know the name of the camp counselor. Compl. ¶¶ 1, 17.

*Id.* The counselor "threatened harm to Plaintiff" if Plaintiff disclosed what happened in the stall. *Id.* As a result of this incident, Plaintiff suffers ongoing physical, psychological, and emotional injuries and trauma. *Id.* ¶¶ 2, 3, 28–30.

Plaintiff alleges that the counselor who abused him had a "propensity to engage in the sexual abuse of children," *id.* ¶ 32, and that at the time of Plaintiff's abuse, Defendants YMCA-Delaware and YMCA-USA "were aware of a systemic and widespread problem of sexual abuse in its local chapters, camps and other facilities," *id.* ¶ 36.

## III.   STANDARD OF REVIEW

"A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant." *Choice Pain & Rehab. Ctr., LLC v. Optum, Inc.*, Civ. No. DLB-24-2144, 2025 WL 948294, at *2 (D. Md. Mar. 28, 2025). Once raised, the issue is generally resolved "as a preliminary matter." *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 624 (D. Md. 2025) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

When the court decides the motion without an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). At this stage, the court asks whether the plaintiff's proffered facts, assumed true, are sufficient to support jurisdiction over the defendant. *Id.* (citing *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)).

In making that determination, the court may consider materials beyond the pleadings, including affidavits. *See Troy Brave LLC v. Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 520 (D. Md. 2023) (citing *Hawkins*, 935 F.3d at 226). While the court must construe all

relevant allegations in the light most favorable to the plaintiff, assume their credibility, and draw reasonable inferences in favor of jurisdiction, *id.* at 520–21, it need not credit conclusory allegations, nor look "solely to the plaintiff's proof[,]" *MuniCap, Inc. v. Wilson*, Civ. No. SAG-24-1274, 2025 WL 3237421, at *3 (D. Md. Nov. 20, 2025). Rather, the Court "may also look at the defendant's proffered proof and assertions regarding the defendant's lack of contacts with the forum state." *Collard v. Bank of Am.*, Civ. No. SAG-25-0041, 2025 WL 1258039, at *1 (D. Md. May 1, 2025) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

## IV.    DISCUSSION

### A.  YMCA-USA's Motion

YMCA-USA moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* ECF No. 16-1 at 10.[5] It argues that Plaintiff cannot establish jurisdiction under Maryland's long-arm statute because YMCA-USA has not engaged in any conduct directed at Maryland or any Maryland resident in connection with this case. *Id.* at 12. YMCA-USA further contends that it is a "separate and distinct legal entity" from its 753 corporate member associations and their more than 2,500 branches nationwide, and that it "does not own, operate, control, or oversee the operations of member associations, including but not limited to, member associations in Maryland or that operate in Maryland, such as YMCA-Delaware." *Id.* at 14. YMCA-USA argues that it "took no actions in connection with the Incident or this action," and that "YMCA-Delaware's contacts cannot be imputed to YMCA-USA for jurisdictional purposes." *Id.* at 18.

---

[5] YMCA-USA also argues that the Complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim. *See* ECF No. 16-1 at 19, 20–26. The Court need not reach this issue because, as explained herein, the Court lacks personal jurisdiction over YMCA-USA, and the claims against YMCA-USA must be dismissed for this reason alone.

In support, YMCA-USA relies on the Declaration of Samuel Frisby, its Vice President of Certification and Membership Qualifications. *See* ECF No. 16-2 ("Frisby Decl."). The Declaration explains that YMCA-USA operates pursuant to its Constitution and Bylaws, which define its relationship with member associations, also known as "Participating Y's." *Id.* ¶ 5. Each member association—including YMCA-Delaware—is an "autonomous, independent organization" with its own corporate structure, governance, personnel, and assets. *See Id.* ¶ 6. Additionally, Frisby declares that YMCA-USA does not purchase, own, operate, control, oversee, maintain, repair, inspect, or otherwise have involvement in the property, premises, or facilities of member associations. *Id.* ¶ 8. YMCA-USA states that it does not: conduct business in Maryland; have an agent for service of process in Maryland; own or operate Camp Tockwogh or facilities used by Camp Tockwogh; have an office or place of business in Maryland; or target any advertising to or otherwise solicit business from Maryland residents.[6] *Id.* ¶¶ 10–18.

## B. Plaintiff's Response

Plaintiff responds that YMCA-USA exercises significant control over its member organizations through mandatory membership requirements. *See* ECF No. 21 at 9 (citing ECF No. 21-1, Ex. A, Frisby Dep. 22:15–23:8).[7] According to Plaintiff, member organizations must agree not to tarnish the YMCA brand, complete training on issues including child abuse prevention, and submit reporting and audit materials. *Id.* at 9–10 (citing Frisby Dep. 25:3–26:24). Plaintiff further

---

[6] YMCA-USA admits that it has six employees who work remotely from Maryland but states that none perform work related to YMCA-Delaware or Camp Tockwogh. *See* ECF 16-1 at 15. Moreover, YMCA-USA acknowledges that it maintains a general website that allows users to "Find Your Y," but states that when a local Y is located, the user is then prompted to select and visit the website of that "separate entity." *Id.*

[7] Attached to Plaintiff's opposition are excerpts from the deposition provided by Mr. Frisby in a state court action in New York captioned as *Michael Davis v. YMCA of the USA, et al.*, Case Index No. 950843/2021, Supreme Court of New York, County of New York.

notes that local YMCAs comprise YMCA-USA's National Council and must comply with all membership qualifications to maintain their status. *Id.* at 10 (citing Frisby Dep. at 30:8–18, 32:2–8). These requirements include reporting allegations of sexual abuse to YMCA-USA and completing third-party training on child safety. *Id.* (citing Frisby Dep. at 127:13–128:3, 129:2–7). YMCA-USA may revoke a local organization's charter for failure to comply. *Id.* (citing Frisby Dep. at 159:17–161:12). Plaintiff contends YMCA-USA's purpose is to organize and regulate local YMCAs under a unified brand and mission, with mandatory standards governing operations. *Id.* at 11. According to Plaintiff, those standards include training and policies directly related to the subject matter of this case.

Accordingly, Plaintiff argues that YMCA-USA has engaged in purposeful activity in Maryland because it imposes its brand, policies, and operational requirements on local entities. In Plaintiff's view, YMCA-Delaware operates as part of this unified structure, and its activities—including the operation of Camp Tockwogh—should be attributed to YMCA-USA. *See id.* at 12. Plaintiff thus concludes that YMCA-USA should be required to defend against claims arising from those activities. In the alternative, Plaintiff requests jurisdictional discovery, arguing that factual disputes regarding YMCA-USA's relationship with its member organizations warrant further development of the record. *Id.*

### C. Personal Jurisdiction

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) jurisdiction is authorized under the state's long-arm statute and (2) the exercise of jurisdiction conforms to the Fourteenth

Amendment's due process requirements. *See id.* When interpreting the reach of Maryland's long-arm statute, this court is bound by the interpretations of the Supreme Court of Maryland. *See Collard*, 2025 WL 1258039, at *2 (collecting citations). Maryland courts have consistently held that Maryland's "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 576 (Md. 2005). Nonetheless, "both prongs must be satisfied in order to properly exercise personal jurisdiction." *Collard*, 2025 WL 1258039, at *2 (citing *Pinner v. Pinner*, 225 A.3d 433, 443 (Md. 2020)); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) ("Moreover, the [Supreme Court of Maryland] has recognized that there may be cases in which the facts satisfy constitutional due process but do not satisfy Maryland's long-arm statute."). Under the first prong, "a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in his opposition to a [Rule] 12(b)(2) motion." *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 247 (D. Md. 2022) (citations omitted); *see also Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001) ("It is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction . . . ."). Under the second prong, "due process requires only that . . . a defendant ... have certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction: "general" and "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded

as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "Specific" jurisdiction arises when there is an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" *Id.* at 919; *see also Carefirst of Md.*, 334 F.3d at 397. To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

### D. Analysis

#### 1. Maryland Long-Arm Statute

The Court begins its analysis with the long-arm statute. Under Maryland's long-arm statute,

> [a] court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. ("CJP") §§ 6-103(b)(1)–(6).[8]

Plaintiff fails to identify any applicable provision of the long-arm statute in either his Complaint or his opposition to YMCA-USA's motion. Plaintiff's Complaint is subject to dismissal for this reason alone. *See Curd v. Papa John's Intl., Inc.*, 692 F. Supp. 3d 525, 530 (D. Md. 2023) ("The court declines to act on behalf of Plaintiff and opine which, if any, statutory provision supports the exercise of personal jurisdiction[.]"); *York v. Albany Med. Ctr. Hosp.*, Civ. No. JRR-21-02597, 2023 WL 3995669, at *3 (D. Md. June 14, 2023) ("Plaintiff's silence with respect to any specific statutory provision authorizing personal jurisdiction over Defendants compels the court to conclude that it may not exercise jurisdiction over Defendants under the long-arm statute.").

Plaintiff's Complaint does cite CJP § 6-201, a venue statute requiring that an action filed in Maryland state court to be "brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation," and providing that a corporation may be sued in the county "where it maintains its principal offices in the State." *See* Compl. ¶ 7.[9] But, again, § 6-201 addresses venue—not personal jurisdiction. And even if it were relevant to the jurisdictional inquiry, the Complaint does not allege that YMCA-USA resides in Maryland, carries on a regular business there, or maintains its principal office in the State.

---

[8] The Court also notes that Maryland's long-arm statute imposes a limiting condition: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." CJP § 6-103(a).

[9] Plaintiff's Complaint contains two paragraph sevens. The citation to Maryland's venue statute is in the second.

9

Even construing Plaintiff's Complaint liberally, it is devoid of any factual allegations that would authorize the Court to exercise personal jurisdiction over YMCA-USA under Maryland's long-arm statute. The Complaint does not allege facts to suggest that YMCA-USA "[t]ransacts any business or performs any character of work or service in [Maryland]." CJP § 6-103(b)(1). "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Cranford v. Tennessee Steel Haulers, Inc.*, Civ. No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (citation omitted); *see also Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 428 (Md. App. Ct. 2017) (holding that "several contacts related to the cause of action only tangentially" do not establish personal jurisdiction). Here, Plaintiff does not allege that YMCA-USA itself conducted any significant business in Maryland, relying instead on the conclusory assertion that it acted "through YMCA Delaware and Camp Tockwogh." ECF No. 21 at 12.[10] And the Declaration attached to YMCA-USA's motion confirms that this defendant does not conduct or solicit business or maintain any office in Maryland. Frisby Decl. ¶¶ 10–18. Therefore, § 6-103(b)(1) does not confer personal jurisdiction over YMCA-USA in Maryland. Nor do §§ 6-103(b)(3) or (4) provide personal jurisdiction over YMCA-USA in this forum. First, under CJP § 6-103(b)(3), "both the tortious injury and activity must occur in Maryland." *Pandit v. Pandit*, 808 F. App'x 179, 182 (4th Cir. 2020) (unpublished). While Plaintiff asserts that he suffered injury in Maryland due to YMCA-USA's conduct, Plaintiff concedes that YMCA-USA is "domiciled" in Illinois, *see* Compl. ¶ 7, indicating that any "act or omission" by YMCA-USA would not have been in Maryland.

---

[10] Similarly, Plaintiff does not allege that YMCA-USA contracted to "supply goods, food, services, or manufactured products in the State," so CJP § 6-103(b)(2) also is not applicable.

Section 6-103(b)(4) does not apply to YMCA-USA for at least two reasons. First, Plaintiff fails to establish that YMCA-USA "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services." CJP § 6-103(b)(4); *see also Phillips v. British Airways*, 743 F. Supp. 3d 702, 713 (D. Md. 2024) (noting that § 6-103(b)(4) has been construed as a general jurisdiction statute that requires the defendant's contacts to be extensive, continuous, and systematic) (citations omitted). Moreover, Plaintiff's improper "shotgun" pleading alleges conduct by all named defendants as a group and leaves entirely unclear what tortious conduct is attributable to YMCA-USA. *See Lee v. Meyers*, Civ. No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022) ("[T]he Federal Rules of Civil Procedure do not countenance what is known as 'shotgun pleading.'") (citations omitted); *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, Civ. No. DKC 21-1778, 2022 WL 4080320, at *4 (D. Md. Sept. 6, 2022) (explaining procedural problems with conclusory and speculative group pleading); *Doe v. Wyndham Hotels & Resorts*, Inc., No. 2:24-CV-204, 2025 WL 725268, at *10 (E.D. Va. Mar. 6, 2025) (describing a form of shotgun pleading as asserting claims against multiple defendants without specifying who is responsible for which conduct) (citation omitted). Across more than 50 paragraphs—and more than 65 references—the Complaint repeatedly invokes "Defendants" collectively, including in every paragraph from 30 through 78, which span all three counts, drawing no distinction between the Camp Tockwogh entity (which does not independently exist), YMCA-Delaware, and YMCA-USA. *See* Compl. ¶¶ 31–78. Even if Plaintiff invoked CJP § 6-103(b)(4), which is far from clear, the Court is unable to find with any degree of confidence that YMCA-USA caused any tortious injury in Maryland.

In sum, Plainitff fails to establish that Maryland's long-arm statute provides this Court the ability to exercise personal jurisdiction over YMCA-USA.

### 2. Due Process

Nor would exercising personal jurisdiction over YMCA-USA comport with due process. Plaintiff fails to establish that either general or specific personal jurisdiction over YMCA-USA in this forum.

General jurisdiction "extends to any and all claims brought against a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (cleaned up). Before a defendant is exposed to such sweeping jurisdiction, however, due process requires "continuous and systemic" contacts with the forum state. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). For a corporation, the inquiry considers whether the corporation is "fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131–32 (4th Cir. 2020) ("General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'") (quoting *Daimler AG*, 571 U.S. at 122). "The paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business." *Ross v. TK Elevator Corp.*, Civ. No. ELH-25-883, 2026 WL 302536, at \*5 (D. Md. Feb. 5, 2026) (cleaned up) (quoting *Fidrych*, 952 F.3d at 132).

Here, YMCA-USA is not "at home" in Maryland. Plaintiff does not dispute that YMCA-USA is not incorporated in Maryland, does not have an agent for service of process in Maryland, and does not have an office or place of business in Maryland. In short, Plaintiff fails to establish

that YMCA-USA's contacts with Maryland are "so constant and pervasive" that exercise of general jurisdiction is constitutionally permissible.[11]

Specific jurisdiction "covers defendants less intimately connected with a [forum] State, but only as to a narrower class of claims." *Ford Motor*, 592 U.S. at 352. "[T]he constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). That is, a defendant subject to specific personal jurisdiction "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 592 U.S. at 352 (cleaned up). Such a defendant's contacts with the forum "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 359 (alterations in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The Supreme Court has held that a defendant may be subject to personal jurisdiction where it has "established a substantial and continuing relationship" with the forum state. *Burger King*, 471 U.S. at 487.

Additionally, "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum[ ]" in order for the forum to exercise specific jurisdiction of the defendant. *Ford Motor*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262). The phrase

---

[11] Plaintiff cites one case, *Steir v. Girl Scouts of USA*, 218 F. Supp. 2d 58, 64 (D.N.H. 2002), to suggest that general jurisdiction is proper. That reliance is misplaced. In *Steir*, the plaintiff alleged that the Girl Scouts of the United States of America ("GSUSA") maintained continuous and systematic contacts with New Hampshire, including that: (1) GSUSA received membership dues from girls registered in New Hampshire; (2) it earned royalty income from Girl Scout cookie sales in the state; (3) it sold uniforms, badges, and other materials to New Hampshire residents through its catalog and website; (4) it offered training sessions and collected registration fees from New Hampshire troop leaders and volunteers; (5) it held at least one regional training session in the state; (6) it insured the activities of local troops; and (7) it established safety and performance standards through its manuals. *Id.* at 63–64. In addition to these contacts, the court emphasized GSUSA's role in recruiting members, authorizing local troops to use its federally protected trademarks, and revoking charters for failure to maintain membership levels or comply with organizational guidelines. *Id.* at 64. On that record, the court found sufficient minimum contacts. No comparable allegations are present here.

"arise out of" indicates a causal relation, while "relate to" "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor*, 592 U.S. at 362. Ultimately, a court's exercise of personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 358 (quoting *Int'l Shoe*, 326 U.S. at 316–317).

The Fourth Circuit distills these principles into a three-prong test, considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

As to purposeful availment, the Fourth Circuit considers a non-exhaustive set of factors, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

To begin, as explained above, Plaintiff's "shotgun" pleading—attributing wrongful conduct to all named defendants as a group—fails to attribute any specific acts to YMCA-USA.

14

The Declaration attached to YMCA-USA's motion confirms that YMCA-Delaware acts separately and independently from YMCA-USA and that the two defendants do not share assets, personnel, or corporate structure, Frisby Decl. ¶¶ 5–8, undermining the Complaint's pervasive improper group pleading. Plaintiff offers no facts to call this Declaration into doubt and thus fails to establish that his claims "arise out of or relate to" YMCA-USA's contacts with the forum, which is reason enough to decline the exercise of specific jurisdiction over YMCA-USA.

In addition, Plaintiff fails to show that YMCA-USA purposefully availed itself of Maryland. YMCA-USA does not maintain offices or agents in the State. It does not have property in the State. It does not solicit business in Maryland or have significant or long-term business activities in the State. Instead, Plaintiff's argument is that because YMCA-USA imposes its brand, policies, and membership qualifications on YMCA-Delaware, which operates Camp Tockwogh in Maryland, it "is reasonable and logical" that YMCA-USA must participate in this jurisdiction. *See* ECF No. 21 at 12. Courts have rejected Plaintiff's theory. In *McKannan v. National Council of Young Men's Christian Associations of the United States*, the court declined to exercise jurisdiction over YMCA-USA based on a local association's forum contacts, emphasizing the entities' separateness and autonomy. *Id.* at *3–5. Other courts have reached the same conclusion. *See, e.g.*, *The E.S. Trust v. United States Fire Ins. Co.*, No. 624,761 (First Dist. Ct. La. Jan. 3, 2023); *Niedbalski v. Upper Main Line YMCA*, No. 240102787 (Pa. Ct. Com. Pl. Jan. 21, 2025).[12] These decisions are consistent with settled law: a parent or national organization is not subject to jurisdiction merely because an affiliated entity operates in the forum. *See Debt Relief Network,*

---

[12] YMCA-USA attaches the underlying motions and orders in *The E.S. Trust* and *Niedbalski* as Exhibits 2 and 3 to its motion to dismiss. *See* ECF Nos. 16-3, -4. Plaintiff does not address either case, or *McKannan*, in his opposition. *See* ECF No. 21.

15

*Inc. v. Fewster*, 367 F. Supp. 2d 827, 830 (D. Md. 2005); 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4 (4th ed. 2025).

In sum, Plaintiff alleges no facts showing that YMCA-USA purposefully directed activities at Maryland or that his claims arise out of any such activities. Exercising jurisdiction on this record would impermissibly collapse the distinction between a national organization and its local affiliates. The Court therefore declines to exercise specific personal jurisdiction over YMCA-USA.

### 3. Jurisdictional Discovery

Finally, in a single sentence, Plaintiff's opposition vaguely asserts that "[a]t a minimum, based upon the factual proffers and disputes between the parties regarding the role of YMCA-USA and its relationship with its local branches, consistent with Court procedure, the Court should allow jurisdictional discovery." ECF 21 at 12. But the opposition identifies no specific dispute warranting such discovery. *See Carefirst of Md.*, 334 F.3d at 402–03 (holding that where a plaintiff offers only speculation or conclusory assertions about forum contacts, a court acts within its discretion in denying jurisdictional discovery); *see also Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). To be sure, a court, within its broad discretion, may order "limited jurisdictional discovery" in cases "where the record suggests some indicia of personal jurisdiction[.]" *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 448 (D. Md. 2019). But it is also  "within [a court's] discretion [to] deny[] jurisdictional discovery" where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," *Carefirst of Md.*, 334 F.3d at 402 (citation omitted), or "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants," *id.* at 403 (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). Apart from Plaintiff's vague and improper group pleading and

16

unsupported, conclusory claims about the relationship between YMCA-USA and YMCA-Delaware—which are largely disproven by the Declaration attached to YMCA-USA's motion—the record here bears no indicia that personal jurisdiction may be properly exercised over YMCA-USA in this forum. On this record, jurisdictional discovery is not warranted.

## V.    ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that YMCA-USA's motion to dismiss (ECF No. 16) under Rule 12(b)(2) is GRANTED, and Plaintiff's claims against YMCA-USA are DISMISSED without prejudice. The Clerk SHALL TERMINATE both YMCA-USA and YMCA Camp Tockwogh as defendants in this matter.

  3/31/26                            /S/
Date                                  Matthew J. Maddox
                                    United States District Judge